UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBIN KIRK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of the Social Security, )<br>Administration, )<br>)<br>Defendant. ) | CASE NO.: 1:13-cv-106-SEB-DML |

## Order on Complaint for Judicial Review

Plaintiff Robin Kirk applied on January 7, 2011, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that she has been disabled since October 1, 2010. An administrative law judge ("ALJ") held a hearing on May 30, 2012, at which Ms. Kirk appeared and testified. On June 12, 2012, acting for the Commissioner of the Social Security Administration, the ALJ denied Ms. Kirk's claim, and found that she is not disabled. The Appeals Council denied review of the ALJ's decision on November 19, 2012, rendering the ALJ's decision for the Commissioner final. Ms. Kirk timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Kirk contends that the ALJ erred by failing to give controlling weight to the opinion of her treating physician and issued an opinion that was not supported by substantial evidence. As addressed below, the court finds that the ALJ's decision to discount the opinion of the treating physician is not supported by substantial

evidence in the record.  Accordingly, the Commissioner's decision is REVERSED AND REMANDED.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits).  Ms. Kirk is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled, despite her current medical condition.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal

2

any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, education, and RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is narrow and deferential. They must be upheld "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a

3

scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* **246 F.3d 1026, 1029 (7th Cir. 2001).**  The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  In addition, he must "build an accurate and logical bridge from the evidence to [his] conclusion."  *Dixon,* 270 F.3d at 1176.

## Analysis

Ms. Kirk's treating physician, Dr. Robert C. Cater, provided an opinion regarding Ms. Kirk's functional capacity that, if credited and given controlling weight, dictated a finding that Ms. Kirk was disabled – at least as of the date of Dr. Cater's opinion.  The ALJ rejected Dr. Cater's opinion on the ground that it was not supported by the medical evidence.  Ms. Kirk contends that the ALJ's explanation regarding the lack of medical support for Dr. Cater's opinion is itself not supported by substantial medical evidence.  To address Ms. Kirk's assertions, the court will first summarize the medical evidence relied on by the ALJ.

4

A. **The ALJ's Sequential Findings**

Ms. Kirk was born in 1959 and was 51 years old as of the alleged onset of her disability in 2010. She had dropped out of high school after the eleventh grade to take a job that paid "good money." (R. 54). She had a lengthy work history and had worked for the same employer from 1986 to 2010. (R. 57).

The ALJ determined at step one that Ms. Kirk had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date. At step two, the ALJ identified the following severe impairments: degenerative disc disease of the lumbar spine, right shoulder dysfunction, chronic obstructive pulmonary disease ("COPD"), diabetes mellitus, and osteoarthritis (R. 31). At step three, the ALJ evaluated Ms. Kirk's severe impairments against the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and found "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."

For purposes of steps four and five, the ALJ adopted the following residual functional capacity (RFC)[1] to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), specifically:

> The claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for two hours at a time for a total of six hours each in an 8-hour workday. She can occasionally bend, stoop, crouch, crawl, kneel, squat, and climb stairs and ramps, but should never climb ladders, ropes or scaffolds. There should be no overhead work with the right upper extremity above the shoulder level. The claimant should never use foot controls with either lower extremity. The claimant should avoid unprotected heights and she should not engage in driving. She can

---

[1] Residual functional capacity (RFC) represents what an individual can still do, despite his or her limitations. 20 C.F.R. § 404.1545(a).

5

have occasional exposure to fumes and other respiratory irritants. She should avoid concentrated exposure to humidity and temperature extremes (R. 35).

With this RFC, Ms. Kirk could not perform any past relevant work, but the ALJ found that there are jobs that exist in significant numbers in the national economy that she can perform. Accordingly, the ALJ found at step five that she is not disabled (R. 40).

### B. Medical History and Diagnosis

Ms. Kirk had numerous emergency room visits prior to the alleged disability onset date for a rash on her leg with some swelling, shortness of breath, and chest pains (R. 210-11, 220-21, 237-46, 249, 310-13). On April 5, 2010, she was examined by Dr. Dan K. Nordmann, who cited a previous MRI that showed multilevel degenerative disc disease, spondylosis, and disk displacement at L3-4, 4-5, and L5-S1 (R. 330). She underwent a bilateral L4-5, L5-S1 facet injection on June 4, 2010 (R. 328-329). On September 14, 2010, she was seen at the St. Francis Pain Center, where she was diagnosed with low back pain and lumbar spondylosis (R. 323). Dr. Robert C. Cater diagnosed her with lumbago (scatia due to lumbar disc degeneration) as reflected on a December 17, 2010 document titled "Report of Attending Physician." On this document, Dr. Cater wrote that she "had a low back injury and damage resulting in a pinch of one or more nerves in the back" (R. 461). On January 5, 2011, she had a physical examination at St. Francis Pain Center showing a diagnosis of chronic low back pain, lumbar spondylosis, and chronic pain management (R. 321). On February 15, 2011, she went to the emergency room after

6

falling and injuring her right shoulder.  She was diagnosed with a right shoulder contusion post fall, and pneumonia (R. 354).

On February 28, 2011, she underwent a consultative physical examination with Dr. Audrey Wehr, M.D. who diagnosed arthritis, emphysema, depression, and diabetes (R. 401).  Dr. Cater's March 21, 2011 treatment notes reflect she had neck pain with limited neck mobility, and back pain with limited back mobility.  His diagnosis included occipital neuralgia with disabling headaches, cervical osteoarthritis, lumbar disc degeneration at L5-S1 with chronic back pain, COPD and cigarette abuse, type II diabetes, an affective disorder, and possible rheumatoid arthritis.  He noted a "permanent medical disability due to arthritis of the neck and back," while also a "permanent partial disability due to COPD and type II diabetes and rheumatism" (R. 420).  On March 23, 2011, Ms. Kirk visited St. Francis Pain Center with complaints of low back pain, lumbar spondylosis, and right shoulder pain.  And on March 30, 2011, J. Sands, M.D., completed a physical residual functional capacity assessment and diagnosed Ms. Kirk with arthritis and COPD (R. 462).

On June 29, 2011, Ms. Kirk again saw Dr. Dan Nordmann for a yearly follow-up appointment regarding low back pain.  His impression was "fairly stable with regards to her chronic pain," but noted there appears to be "venous insufficiency" with regards to her lower extremities.  He was also concerned about "arterial flow," and recommended she see Dr. Salvatore to evaluate her "lower extremity problem" (R. 519, 543).  She had treatment from St. Francis Pain Center between September

2011 and November 2011, when a diagnosis of chronic low back and leg pain was noted.

On February 5, 2012, Ms. Kirk visited the emergency room with a chief complaint of abdominal pain.  She had a CT scan of the abdomen and pelvis and was diagnosed with upper abdominal pain, normocytic anemia, and probable cirrhosis (R. 499).  Progress notes from a visit with Dr. Cater on March 21, 2012, show Ms. Kirk had concerns about her blood pressure.  The notes reflect a diagnosis of cirrhosis, ascites, COPD, and fatigue (R. 544).  On May 7, 2012, Dr. Cater opined that Ms. Kirk could stand/walk for 15 minutes at one time for a total of 60 minutes in an 8 hour workday, sit for 60 minutes at a time and 4 hours total in an 8 hour workday, and lift no more than 10 pounds on a frequent or occasional basis, and bend, stoop, and balance occasionally.  He further opined that she would need to elevate her legs during an 8 hour workday, that her pain and other symptoms would be severe enough to constantly interfere with attention and concentration, and that on average, she would be absent from work more than 4 days per month as a result of the impairments or treatment (R. 572).

C.    **The Treating Physician Rule**

The weight an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(c).  A medical opinion by a treating physician or other acceptable treating medical source about the nature and severity of a claimant's impairments, including any resulting mental or physical restrictions, is entitled to "controlling weight" if it is well-supported by objective medical evidence

8

and is not inconsistent with other substantial evidence. *Id.* § 404.1527(d)(2). *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir.2011). ("[T]reating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record.") An ALJ may discount a treating physician's opinion, however, when it is "internally inconsistent" or is inconsistent with the opinion of a consulting physician. *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir.2007). If a treating physician's opinion is not entitled to controlling weight, it still must be evaluated using the same factors relevant to weighing other medical opinions. That is, the ALJ decides the weight to accord it based on the degree to which a medical opinion (a) is supported by relevant evidence and explanations; (b) considered all evidence pertinent to the claimant's claim; (c) is consistent with the record as a whole; and (d) is supported or contradicted by any other factors. *Id.* § 404.1527(c)(3)-(6). The physician's field of specialty and the nature and extent of her treatment relationship with the claimant are also considered. *Id.* 404.1527(c)(2)(i), and (c)(2)(ii). In addition, SSR 96-2p provides that the ALJ must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the *reasons* for that weight" (*emphasis added).*

### D. The ALJ's Evaluation of Dr. Cater's Opinion

The ALJ gave little weight to Dr. Cater's opinions in reaching the RFC determination, and instead relied upon those of the state physicians. However, in

doing so, he failed to articulate a minimal, but legitimate justification for his decision.

The ALJ's analysis of Dr. Cater's opinion was perfunctory. He rejected all of Dr. Cater's opinions about Ms. Kirk's functional abilities to stand, sit, and walk in an 8-hour work day and engage in postural activities, the effect of her pain and other symptoms on her ability to concentrate and work on a regular basis, and her need to elevate her legs. He did so on the sole ground that Dr. Cater's May 2012 opinion on Ms. Kirk's ability to bend and stoop was contradicted by his earlier statements in March 2011 about Ms. Kirk's bending and stooping abilities. The whole of the ALJ's analysis of Dr. Cater's opinion reads:

> I have evaluated the medical opinions in making the residual functional capacity determination. I give little weight to the opinions of Dr. Robert Cater. In March 2011, he opined that the claimant had permanent medical disability due to arthritis of the neck and back. He further opined that the claimant would be unable to bend, climb, squat, or repeatedly lift overhead. However, Dr. Cater opined on May 7, 2012 that the claimant would be limited to occasional bending and stooping, which contradicts his earlier statement (R. 38).

In effect, the ALJ determined that because Dr. Cater believed in March 2011 that Ms. Kirk could not "bend, climb, squat, [and] repeatedly lift overhead," but decided in May 2012 that Ms. Kirk "occasionally" could bend and stoop, that nothing Dr. Cater said in May 2012 is entitled to weight. The court agrees with Ms. Kirk that Dr. Cater's opinions separated by a year's time about Ms. Kirk's functional capacity to bend and stoop cannot be rejected out of hand simply because the opinions are different, and that the ALJ failed to make sufficiently clear the reasons why Dr. Cater's opinions were given no weight.

10

The ALJ also stated that Dr. Cater's "opinions regarding the claimant's exertional limitations and the need to elevate her legs are not supported by the objective medical evidence and are therefore given no weight."  However, less than a year before, Ms. Kirk had seen her spine doctor, Dr. Dan Nordmann, who noted a "venous insufficiency" with regards to her lower extremities and concerns about "arterial flow" (R. 519, 543).  Ms. Kirk also testified at the May 30, 2012, hearing that Dr. Nordmann restricted her lifting to 15 pounds (R. 65).  The record also reflects treatment from St. Francis Pain Center between September 2011 and November 2011, and a diagnosis of chronic low back and leg pain.  The ALJ failed to give specific reasons for giving no weight to Dr. Cater's opinion that Ms. Kirk would need to elevate her legs during an 8-hour workday, or otherwise explain why he found that opinion unsupported by objective medical evidence.

## Conclusion

For the aforementioned reasons, substantial evidence does not support the ALJ's determination that Ms. Kirk is not disabled.  The Commissioner's decision must therefore be REVERSED and REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

So ORDERED.

Date: _03/05/2014_____

_Sarah Evans Barker_ (signature)
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

11

**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**